# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SALUTA NELSON, KATHY NELSON,**                    **CIVIL ACTION**
**JEROME NELSON, TASHA NELSON,**
**AND WILLIAM NELSON**

**VERSUS**                                          **NO. 10-827-JJB-RLB**

**DERIK LOUISE, et al.**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 5, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**SALUTA NELSON, KATHY NELSON,**                    CIVIL ACTION
**JEROME NELSON, TASHA NELSON,**
**AND WILLIAM NELSON**                    NO. 10-827-JJB-RLB

**VERSUS**

**DERIK LOUISE, et al.**

## REPORT AND RECOMMENDATION

This matter is now before the court on a *sua sponte* review of the amended complaint (R.

Doc. 23) under Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. §

1915(e)(2)(B).  Generally speaking, under Rule 12(b)(6), a district court may dismiss a

complaint on its own for failure to state a claim, "as long as the procedure employed is fair."

*Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).  In this context, fairness requires "both

notice of the court's intention and an opportunity to respond."   *Id.* at 1054, *quoting Ricketts v.

Midwest Nat'l Bank*, 874 F.2d 1177, 1185 (7th Cir. 1989).   "Analyzing the merits of a plaintiff's

claim in a report and recommendation and giving the plaintiff an opportunity to object to the

recommendation is a fair process for dismissing a case."  *Franklin v. Laughlin*, 2011 WL

598489, *1 (W.D. Tex. Jan. 13, 2011).

## I.     PROCEDURAL BACKGROUND

This matter was initiated by the filing of a complaint on December 9, 2010, asserting

various claims by the above-referenced plaintiffs against approximately 55 named defendants.

(R. Doc. 1).  On March 16, 2011, the Magistrate Judge previously assigned to this case ordered

plaintiffs to file an amended complaint, not to exceed 20 pages, describing the specific actions or

inactions by specific defendants which gave rise to the violation of plaintiffs' rights. (R. Doc. 21).[1] On April 13, 2011, plaintiffs filed the amended complaint. (R. Doc. 23). On September 8, 2011, the previous Magistrate Judge granted plaintiffs' motions to proceed *in forma pauperis* ("IFP"). (R. Doc. 35). The Magistrate Judge, however, ordered the U.S. Marshal Service to withhold service so that the court could conduct a review as to "whether the complaint should be dismissed as frivolous or malicious, or because it fails to state a claim upon which relief may be granted." (R. Doc. 35 at 3).

## II.      APPLICABLE LAW

A district court must liberally construe the allegations of a complaint filed IFP by *pro se* plaintiffs. Nonetheless, even the most liberally construed IFP complaint may be dismissed at any time, regardless of service or the filing of an answer, if the court determines that the case:

  (I)      is frivolous or malicious;

  (ii)     fails to state a claim; or

  (iii)    seeks monetary relief against an immune defendant.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *Id.* at 326-27. Claims are factually frivolous when they are based on factual allegations that are delusional, fantastic,

---

[1]      That order noted that "plaintiffs' complaint consists of more than 250 pages, names more than 50 defendants, and appears to originate from the arrest of one of the plaintiffs in July 2002 and his subsequent prosecution for a crime. Other than that, it is impossible to determine from the complaint what the claims are, or which claims belong to which plaintiffs and which defendants." (R. Doc. 21 at 2-3).

fanciful, or otherwise clearly baseless.  *Buckenberger v. Reed*, 342 Fed. Appx. 58, 61 (5th Cir.

2009).  In authorizing the review of a complaint for frivolousness, the law accords judges not

only the authority to dismiss a claim which is based on an indisputably meritless legal theory,

but also the unusual power to pierce the veil of the factual allegations.  *Denton v. Hernandez,*

504 U.S. 25, 32 (1992).

To determine whether a complaint fails to state a claim, courts apply the same standard

used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows for

dismissal if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6); *see also Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003) (dismissal of IFP

complaint for failure to state a claim employs Rule 12(b)(6) standard).  Rule 12(b)(6) requires a

court to "accept all well-pleaded facts as true" in a "light most favorable to the plaintiff."  *Baker*

*v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In that posture, dismissal only becomes appropriate

"if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief."  *Scanlan v. Texas A&M Univ*., 343 F.3d 533, 536 (5th Cir. 2003).

In most circumstances, a court should allow a plaintiff at least one chance to amend the

complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust*

*Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (a plaintiff is

generally given one chance to amend before dismissal unless  it is clear that the defects are

incurable").  However, a court should deny leave to submit futile amendments — ones that are

"insufficient to state a claim."  *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).  In other

words, "the same standard of legal sufficiency as applies under Rule 12(b)(6)," and by extension

§ 1915(a)(2)(B)(ii), applies to futility.  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873

(5th Cir. 2000).

## III. ALLEGATIONS IN THE AMENDED COMPLAINT

The facts relevant to plaintiffs' claims against each named and potential defendant are unsystematically strewn throughout the record. As with the original complaint, it is still difficult to ascertain the specific causes of action asserted in each section of the amended complaint, and it is likewise difficult to determine the individual plaintiff and corresponding defendant(s) subject to each allegation.

The factual assertions in the amended complaint are summarized as follows. Plaintiffs assert that in 2002, [Assistant] U.S. Attorney Rene Salomon and the West Baton Rouge Narcotic Task Force requested a federal investigation into the 12th Street Grocery, a business owned by defendant Gail Raby and plaintiff William Nelson ("W. Nelson"), allegedly for distribution of drugs into West Baton Rouge Prison and for laundering large sums of monies. (R. Doc. 23 at 2). Plaintiffs allege that a fabricated search warrant was then prepared by defendant James Johnson, a deputy with the West Baton Rouge Sheriff's Office and a member of the Task Force, and signed by Judge Sharah Harris Mulmore, which resulted in an allegedly illegal search of the 12th Street Grocery by members of the Port Allen City Police Department and the Task Force, on or about July 11, 2002. (R. Doc. 23 at 2-3).

Plaintiffs allege that two of the plaintiffs, Jerome Nelson ("J. Nelson") and Tasha Nelson ("T. Nelson") were arrested that same day by members of the Port Allen Police Department and charged with misdemeanor offenses. (R. Doc. 23 at 3). During the arrests, these officers, who were allegedly under the supervision and control of the Task Force, allegedly subjected J. Nelson to a beating that resulted in injuries severe enough to require medical attention. In addition, T. Nelson was "slammed" against a police car, suffering emotional injury. It appears from the complaint and amended complaint that these two plaintiffs, J. Nelson and T. Nelson, were

escorted to jail following these arrests, but were able to bond out the same evening. (R. Doc. 23 at 3).

Plaintiffs further allege that on the same date, presumably during the search of the store, plaintiffs Kathy Nelson ("K. Nelson") and Saluta Nelson ("S. Nelson") were subjected to a strip search in the presence of a teenage girl, which resulted in embarrassment and humiliation for both women. (R. Doc. 23 at 3). There is no suggestion in the complaint and amended complaint that either K. Nelson or S. Nelson were arrested at any time. Nor does the amended complaint contain any substantive allegations relative to plaintiffs K. Nelson or S. Nelson following the July 11, 2002, incident.

Following the execution of the search warrant on or about July 11, 2002, plaintiff W. Nelson apparently communicated with assistant prosecutor Becky Chutz and her staff, with employees at the Task Force office, and with employees at the Port Allen City Police Department regarding the alleged wrongdoing of city and parish officials in authorizing and conducting the referenced search. In addition, plaintiff W. Nelson sought the return of more than $18,000.00 that he contended belonged to him and was allegedly stolen by Task Force agents Jerome Fontenot and James Johnson during the execution of the search warrant. According to plaintiff W. Nelson, he was requesting a full investigation into the July 11, 2002, incidents, was seeking to file charges against the offending officers, and was taking steps to file a civil action relative to these incidents. No cooperation was forthcoming from the respective offices, however. Instead, plaintiffs assert that, in order "to shield the taskforce corruption fake search warrant and raid," these agencies "purposely" offered W. Nelson only "blurred information" and "tons of vague ignorant answer[s] to evade ... direct targeted questions ... in order to not investigate arrest the predators/task force agents or issue us protection." (R. Doc. 23 at 3).

Plaintiffs allege that approximately 2½ weeks after the search, on or about July 29, 2002, W. Nelson and J. Nelson were falsely arrested and held on fabricated felony drug distribution charges. (R. Doc. 23 at 4). Approximately a week after that, on or about August 7, 2002, plaintiff T. Nelson was also arrested on a felony drug distribution charge. This latter arrest was undertaken by the same two deputies of the West Baton Rouge Sheriff's office, Jerome Fontenot and James Johnson, who were members of the West Baton Rouge Narcotic Task Force and had conducted the referenced search. (*Id.*). Plaintiffs assert that these arrests occurred because plaintiff W. Nelson was attempting to report and disclose the alleged corruption of various law enforcement agencies, judges and court personnel, public defenders and district attorney employees, the Task Force, and an informant; and these arrests were the vehicle by which the Task Force, the state district attorney, the Port Allen police department and mayor, and the city court prosecutor could cover up the alleged faulty search warrant, arrests, seizures, strip searches, use of force and incarcerations. Plaintiffs further assert, in a conclusory allegation, that the alleged theft of $18,000.00 by Task Force agents during the search was perpetrated in order to stop plaintiffs from having access to monies to pay bail bonds and/or retain defense attorneys. Plaintiffs also conclusorily state that because of the Task Force's action, W. Nelson was:

> [T]rapped in jail without a law library and in hope that I [W. Nelson] could not pay high powered private attorneys therewhich would leave the court no other option nevertheless to furnished [sic] plaintiff a weak West Baton Rouge public defender as such, rotten malpractice plea bargain (Attorney Tommy Thompson), there so, so that the state could mold a easy entrapped railroad prosecution against I [W. Nelson] and family members.

(R. Doc. 23 at 4). In addition, plaintiffs allege that state court Judge Robin Free collaborated with the district attorney's office to impose excessively high bonds for plaintiffs J. Nelson, T. Nelson and W. Nelson. Plaintiffs support this assertion by pointing out that, a day earlier, Judge Free and state court prosecutor Becky Chutz had set a much lower bond for Jessie Harris, who is

identified as the son of defendant Patricia Harris, the confidential informant whose information allegedly led to the arrests of plaintiffs. (R. Doc. 23 at 5).

With respect to the misdemeanor charges which were lodged against plaintiff's J. Nelson and T. Nelson on July 11, 2002, plaintiffs assert that these charges were dismissed on September 11, 2002, by Port Allen city court prosecutor Mandy Lucas, who had allegedly learned of irregularities in the earlier search and arrests. (R. Doc. 23 at 5).

Approximately a year after the above-referenced arrests, on or about June 27, 2003, a recusal hearing was held in connection with plaintiff W. Nelson's criminal proceedings. (R. Doc. 23 at 5). This recusal hearing, presided over by state court Judge Alvin Batiste, involved the asserted inability of state court Judge Robin Free to preside over W. Nelson's case. Plaintiffs assert that Judge Free testified at the hearing that he had talked to W. Nelson's counsel, Robert Randolph, sometime during the previous month, which testimony plaintiffs characterize as perjury by Judge Free. After the hearing, Judge Batiste found no cause to recuse Judge Free, and W. Nelson's criminal trial commenced on the same date before Judge Free. (R. Doc. 23 at 6). At some during the trial, however, a mistrial was declared. It is unclear from the complaint and amended complaint what led to the mistrial, but it appears that the mistrial may have occurred because of irregularities involving deals made between the prosecution and the referenced informant, Patrisha Harris, which necessitated that state prosecutor Dana Larpenteur provide testimony regarding those deals. (R. Doc. 23 at 6). In addition, plaintiffs allege that it was learned at the June, 2003, trial that personnel at the offices of the Louisiana State Police, Troop A, with the alleged cooperation of West Baton Rouge Sheriff's Office employees and the district attorney's office, had allegedly falsified line-up photographs, recordings and analyses, which resulted in "rigged" evidence against W. Nelson. Plaintiffs contend that prosecutor Becky Chutz

was aware of this "rigged" evidence and, for this reason, did not appear as prosecutor in the case. (R. Doc. 23 at 6). Plaintiffs also allege that Judge Free stated a belief, after declaring the referenced mistrial, that "no jury is going to believe the C.I." and, as a result, lowered plaintiff W. Nelson's bond. (R. Doc. 23 at 7). Before plaintiff W. Nelson could post bond, however, Task Force agent James Johnson, allegedly "with the knowingly and voluntary participation of city court judge [William] Kleinpeter," fabricated another drug distribution charge, this one relating to an offense allegedly occurring in February, 2001, which resulted in the imposition of an increased bond. (R. Doc. 23 at 7). Plaintiffs allege that agent Johnson and an unidentified agent from the Drug Enforcement Agency ("DEA") lied on the arrest affidavit in order to charge W. Nelson with the new fabricated distribution charge so as to increase his bond. Notwithstanding, a few days later, Judge Free allegedly lowered the bond anyway, allowing plaintiff W. Nelson to obtain his release from confinement. (R. Doc. 23 at 7-8).

After obtaining his release, plaintiff W. Nelson and defendant Gail Raby filed suit in state court, through attorney Joselyn Alex, for return of the monies allegedly stolen during the search of the 12th Street Grocery on July 11, 2002. In addition, through attorney Robert Randolph, plaintiffs filed a civil rights lawsuit in federal court for damages in connection with the alleged wrongful searches, arrests and physical abuse which occurred on July 11, 2002. (R. Doc. 23 at 8). Plaintiffs contend, however, that the filing of these two lawsuits angered prosecutor Chutz, who allegedly took action on July 28, 2003, with the assistance of Judge Free, to set a new trial date for plaintiff W. Nelson for August 18, 2003, only three weeks away. The alleged reason for this rushed trial date was purportedly to prevent W. Nelson from having time to investigate and thereby obtain proof of the defendants' wrongdoing. Although attorney Robert Randolph thereafter moved to continue the trial and/or withdraw from the case, and although W. Nelson

began filing "numerous" *pro se* motions "trying to stop the mass execution," Judge Free allegedly denied all motions.  (R. Doc. 23 at 8).  Notwithstanding, when attorney Randolph failed to appear on the scheduled trial date, W. Nelson and Judge Free reached an agreement to allow attorney Randolph to withdraw and to appoint a public defender, defendant Tommy Thompson, to represent W. Nelson.  Plaintiff W. Nelson, however, quickly became unhappy with the assistance provided by attorney Thompson, who plaintiff describes as being "corrupted" and "racist" and who allegedly refused to file motions or appeals on plaintiff's behalf, refused to conduct discovery, refused to notify higher authorities of the alleged wrongdoing of the prosecution and court, and instead colluded with the prosecution in attempting "to rush and maliciously prosecute" him.  (R. Doc. 23 at 9).  Plaintiffs contend that this conduct on the part of attorney Thompson was in violation of various state statutes and the standards of professional conduct imposed by the Louisiana Bar Association.  Accordingly, plaintiff W. Nelson sought to terminate the services of attorney Thompson, but Judge Free denied plaintiff's request and scheduled a new trial date of November 17, 2003.  Although plaintiff W. Nelson attempted to obtain the services of other attorneys, he was unsuccessful in light of Judge Free's admonition that no continuances would be allowed and no additional discovery would be permitted.  (*Id.*)

    In connection with the incidents described above and during the same general time frame, W. Nelson allegedly contacted the Federal Bureau of Investigation ("F.B.I.") for the purpose of discussing the alleged wrongdoing of the Task Force, but the F.B.I. refused to investigate the matter.  W. Nelson next approached the state attorney general's office and spoke with an assistant attorney in that office, Johnny Webber, seeking an investigation into the Task Force, but the attorney general's office declined to do so.  W. Nelson also went to the federal Department of Justice and spoke with an assistant United States attorney in that office, who

advised plaintiff to come back later, which plaintiff allegedly did, only to be turned away on several occasions without an investigation. (R. Doc. 23 at 10).

Plaintiff W. Nelson next contends that on November 18, 2003, in connection with his rescheduled trial, all of his discovery motions were denied. As a result, in order to protect himself, plaintiff W. Nelson admittedly fled the court's jurisdiction and went "in hiding." (R. Doc. 23 at 11). Two years later, however, he was apparently apprehended and was "place[d] back in parish prison for a year[] and six month[s] from January 2006 to July 2007." (*Id.*). Plaintiff W. Nelson asserts that during the intervening time period, the felony charges that were pending against plaintiffs T. Nelson and J. Nelson were dismissed without prosecution. (R. Doc. 23 at 11).

Sometime during his incarceration in parish prison, W. Nelson again filed a motion to recuse Judge Free from presiding at the criminal trial because plaintiff believed that Judge Free, by having previously set a rushed and illegal trial date of August 18, 2003, had "went outside his jurisdiction," thereby losing all entitlement to judicial immunity. (R. Doc. 23 at 12). The motion to recuse, however, was denied by Judge William Dupont, notwithstanding that Judge Dupont and the newly appointed prosecuting attorney, Martin Maley, allegedly knew that plaintiff W. Nelson was being "illegally" prosecuted. W. Nelson further alleges that at the recusal hearing, the confidential informant recanted her prior statements and testified that plaintiff W. Nelson had not sold the informant drugs in 2002. Notwithstanding, the state court judge found probable cause to retain the drug distribution charge pending against plaintiff, and prosecutor Maley agreed, and the matter was continued without date. (R. Doc. 23 at 12). W. Nelson complains, however, that immediately after the informant recanted her prior statements, the informant was arrested by Deputy James Johnson – the same Task Force agent who had

falsified the initial search warrant and conducted the search of the 12th Street Grocery – and this arrest was purportedly to pressure the informant into testifying against plaintiff. According to plaintiff W. Nelson, the informant was nonetheless allowed to quickly bond out of custody and was "never billed for any crime." (R. Doc. 23 at 13). Plaintiff W. Nelson further complains that his pending criminal proceedings thereafter remained inactive through April, 2009.

In addition to the foregoing, plaintiff W. Nelson contends that while he was incarcerated in 2006-2007, his attorney, Joselyn Alex, fraudulently took possession of the 12th Street Grocery by defrauding W. Nelson's ex-girlfriend, Gail Raby, and Gail's mother, Peggy Raby.[2] (R. Doc. 23 at 14). Plaintiff W. Nelson further alleges that attorney Alex then attempted to withdraw as counsel on plaintiff's behalf. Plaintiff W. Nelson attempted to delay this withdrawal until he had a chance to question attorney Alex in court, and also to question co-attorney Susan Jones, about attorney Alex's purported reasons for withdrawal and why neither attorney was reporting the wrongdoing of state and parish officials to higher authorities. However, on April 9, 2009, the day that attorneys Alex and Jones were scheduled to testify, they allegedly instead "teamed up" with the court and prosecutor and scheduled a new trial date of September 11, 2009, notwithstanding that plaintiff W. Nelson was about to undergo a major operation which the defendants knew would hamper his ability to prepare for trial. (R. Doc. 23 at 14-15). According to plaintiff W. Nelson, "immediately after illegally setting ... a trial date," both attorneys Alex and Jones withdrew from their representation of W. Nelson. (R. Doc. 23 at 15).

At some point, W. Nelson began sending certified letters to officials in Washington D.C., specifically to the "Washington D.C. criminal integrity division," and a family member began to

---

[2]     Gail and Peggy Raby are listed as defendants in this matter despite the allegations involving them state that they were defrauded and that this fraud occurred when W. Nelson's lawyer was "lying to them."  (R. Doc. 23 at 14).

call them repeatedly. (R. Doc. 23 at 12). Plaintiff W. Nelson alleges, however, that the referenced agency denied him protection from corruption and advised him that there was nothing they could do. According to plaintiff W. Nelson, his certified letters to the referenced agency were specifically addressed to the attention of "U.S. Attorney Eric Holden, Jr., David Ogden, and Gary Grindle," but he received only one unhelpful reply in response to his many letters. (R. Doc. 23 at 13).

Plaintiffs next complain that, between 2007 and January, 2010, plaintiff W. Nelson and his attorney, Kathleen Wilson, have attempted to obtain transcripts of all proceedings conducted before the 18th Judicial District Court. (R. Doc. 23 at 15). Notwithstanding, whereas the defendant court reporters have provided "a few of the requested transcripts," they have otherwise advised that they do not know when the rest will be ready.[3] According to plaintiff W. Nelson, this amounts to an effort to obstruct access to the courts, specifically by hampering his ability to prove, through these transcripts, the sequence of "full corrupted avenues the court agents and prosecutors ha[ve] taken." (*Id.*).

Finally, plaintiff W. Nelson recounts (1) the refusal of employees of various state and federal entities, despite his repeated requests, to investigate his many complaints as outlined above, (2) the refusal by federal judicial officers to allow him to remove his criminal prosecution to federal court,[4] and (3) the refusal by reporters at the Advocate Newspaper and Channel 9

---

[3]     There is also an assertion that the West Baton Rouge Parish Clerk of Court, Mark Graffeo, has unconstitutionally charged poor criminal defendants, including plaintiff W. Nelson, excessive fees to make certain filings. It is further alleged that plaintiff's "free assess [sic] use of the state clerks office" has been denied. (R. Doc. 23 at 18). No date is provided and no other factual specifics regarding these assertions are provided.

[4]     Plaintiff William Nelson attempted to remove the criminal prosecution against him from the 18th Judicial District Court to this court. *See State of Louisiana v. William Nelson*, Case No. 3:09-cv-734-RET-CN. That matter was summarily remanded back to state court, and

television to publish or broadcast information setting forth his side of the story. (R. Doc. 23 at 16-18). In addition, plaintiff W. Nelson alleges that state district Judge Robin Free recused himself from plaintiff's criminal case in September, 2009, because plaintiff had retained a new attorney who was related by marriage to Judge Free. Thereafter, at a hearing conducted on December 9, 2009, before the newly assigned district judge, William Dupont, the prosecutor stated on the record, without presenting any evidence, that the confidential informant was "unable to testify" and that the State, therefore, was dismissing the charges pending against plaintiff W. Nelson. (R. Doc. 23 at 18).

On December 9, 2010, one year after the dismissal of the criminal proceedings pending against plaintiff W. Nelson, plaintiffs filed their federal complaint in this court. The amended complaint was filed on April 23, 2011.

## IV.    ANALYSIS

Based on the foregoing recitation of facts, the court finds that the great majority of plaintiffs' claims, as well as the defendants who are alleged to have participated in those claims, are subject to dismissal by reason of the applicable limitations period.[5] In this regard, pursuant to well-settled jurisprudence, the limitations period applicable to plaintiffs' § 1983 claims asserted against state officials in this case is that applicable in the forum state. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (finding that, in connection with a § 1983 action, the court looks to the forum state's personal-injury limitations period). In Louisiana, this period

---

plaintiff W. Nelson's appeal to the United States Court of Appeals for the Fifth Circuit was dismissed for lack of jurisdiction. (*Id.* at R. Docs. 4, 7).

[5]        Although the limitations defense is an affirmative defense which usually must be raised by defendants, "the district court may raise the defense *sua sponte* in an action under 28 U.S.C. § 1915." *Pittman v. Conerly*, 405 Fed. Appx. 916, 917 (5th Cir. 2010).

is one year from the date of accrual of the cause of action. *See Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002) (applying Louisiana's one-year limitations period to § 1983 claims). Further, this same one-year limitations period may be seen to apply to plaintiffs' claims asserted against federal officials named as defendants in this proceeding in their individual capacities, which claims are interpreted to have been asserted pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (authorizing the assertion of claims against federal officials, in their individual capacities, for the violation of constitutional rights). *See Adrian v. Selbe*, 364 Fed. Appx. 934, 936-37 (5th Cir. 2010) (applying Louisiana's one-year statute of limitations in connection with a *Bivens* claim). Finally, the date of accrual of plaintiffs' claims in this court is determined by application of federal law, and federal law provides that "a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Moore v. McDonald, supra,* 30 F.3d at 620-21. *See also Aduddle v. Body*, 277 Fed. Appx. 459, 461 (5th Cir. 2008). Further, when the facts alleged in a complaint reflect that more than a year has passed since the events complained of, the burden of proof shifts to the plaintiffs to show that the limitations period has been interrupted or tolled. *See Savoy v. St. Landry Parish Council*, 2009 WL 4571851, *3 (W.D. La. Dec. 1, 2009).

Based on the foregoing, it appears clear from the face of plaintiffs' complaint and amended complaint that, for the most part, the claims asserted therein, which claims were first asserted in a pleading filed more than eight years after the search conducted on July 11, 2002, are barred by the applicable limitations period.[6] The court will hereafter address the claims of

---

[6] Although plaintiffs filed a prior federal civil rights lawsuit in this court on July 11, 2003, one year after the referenced search, asserting similar claims of an alleged wrongful search, excessive force and false arrest (supplemented thereafter to include a claim relative to the alleged wrongful seizure of money), *see Gayle Raby, et al. v. City of Port Allen, et al.*, Case No. 3:03-cv-00546-JVP, that prior lawsuit was voluntarily dismissed by plaintiffs, without prejudice,

the respective plaintiffs in groupings that relate to the nature of the claims asserted by each plaintiff.

A. Saluta Nelson and Kathy Nelson

First, with regard to plaintiffs Saluta Nelson and Kathy Nelson, the complaint and amended complaint allege that these plaintiffs were subjected to illegal strip searches on July 11, 2002, presumably during the search of the 12th Street Grocery conducted on that date. It is further alleged that these strip searches were conducted in the presence of a teenage girl, identified as the 13-year-old niece of plaintiff W. Nelson. (R. Doc. 23 at 2-3). There are no further allegations in the complaint or amended complaint, however, relative to any additional wrongdoing committed in connection with these two plaintiffs. Specifically, there are no allegations that these two plaintiffs were arrested or charged with any crimes on that date or thereafter, or that they suffered any further harm after the date of the referenced searches. Based on this recitation, inasmuch as claims asserted in connection with a wrongful search are generally seen to accrue at the time that the search is undertaken, *see, e.g., Bobo v. City of Wichita Falls, Tex.*, 2013 WL 3179499, *2 (N.D. Tex. June 24, 2013); *LeBlanc v. City of Haltom City*, 2011 WL 2149908, *5 (N.D. Tex. May 31, 2011), the court concludes that the entirety of the claims asserted by these two plaintiffs are time-barred and should be dismissed.

B. Jerome Nelson and Tasha Nelson

Turning to a consideration of the claims asserted by plaintiffs Jerome Nelson and Tasha Nelson, the court finds that these claims are also barred by the applicable limitations period. According to the complaint and amended complaint, plaintiff J. Nelson was allegedly subjected to an unlawful misdemeanor arrest and to excessive force on July 11, 2002, during the search of

_____

in December, 2003.

the 12th Street Grocery on that date.  (R. Doc. 23 at 2).  Plaintiffs allege that J. Nelson sustained injuries at that time that were severe enough to require medical attention, but no medical care was provided by any defendant.  As for plaintiff T. Nelson, it is alleged that this plaintiff was also arrested on a misdemeanor charge on that date and that, during the arrest, she was "slammed" against a police car.  It appears from the complaint and amended complaint that plaintiffs J. Nelson and T. Nelson were then escorted to jail following these arrests, but were able to bond out of confinement that same evening.  (R. Doc. 23 at 3).  According to the complaint and amended complaint, the referenced misdemeanor charges were ultimately dismissed by city prosecutor Mandy Lucas on September 11, 2002.

In addition to the foregoing, it is alleged that on July 29, 2002, approximately four weeks after the raid of the 12th Street Grocery, plaintiff J. Nelson was again arrested and this time charged with a felony count of drug distribution, which charge was allegedly based upon information provided by a confidential informant, Patrisha Harris.  Approximately a week later, on August 7, 2002, plaintiff T. Nelson was also arrested and charged with a felony drug distribution offense.  Plaintiffs allege that J. Nelson and T. Nelson were confined at that time and assessed unreasonably high bonds in connection with these arrests, and they assert that these high bonds were the result of wrongdoing and collusion by Judge Robin Free and prosecutor Becky Chutz.  Notwithstanding, it is clear from the allegations of the complaint and amended complaint that the felony charges levied against plaintiffs J. Nelson and T. Nelson were ultimately dismissed in 2005, without prosecution.  (R. Doc. 23 at 11).

Based on the foregoing recitation, the court finds that plaintiffs J. Nelson and T. Nelson assert claims in this proceeding that may be categorized as claims of (1) an unlawful search, excessive force, and deliberate medical indifference occurring on July 11, 2002, (2) false arrest

and imprisonment in connection with the misdemeanor arrests of July 11, 2002, and the felony arrests of July 29 and August 7, 2002, respectively, and (3) malicious prosecution. Addressing each of these categories in turn, the court concludes that these claims are time-barred.

First, as to the claims of these plaintiffs relative to the alleged illegal search, excessive force, and denial of medical attention on July 11, 2002, these claims may be seen to have accrued on the date that the events occurred because these plaintiffs clearly had knowledge of all pertinent facts at that time and of the resulting harm or injury incurred as a result thereof. *See Patin v. Richard*, 2011 WL 9118, *4 (W.D. La. Jan 3, 2011) (concluding that claims "for the use of excessive force during ... [an] arrest, retaliatory arrest and illegal search" accrued on the date of the incident and so were time-barred when the plaintiff filed suit 3½ years later). *See also Harris v. Rivera*, 2013 WL 246709, *7-8 (N.D. Tex. Jan. 23, 2013) (concluding that claims relative to an alleged wrongful arrest and accompanying excessive force accrued on the date of the arrest and were barred when not filed until after the passage of Texas' two-year limitations period). The assertion of these claims in the instant proceeding, therefore, many years after the events complained of, is unwarranted, and these claims are clearly subject to dismissal as being untimely.

Plaintiffs J. Nelson and T. Nelson also assert a claim of false arrest/false imprisonment in connection with their alleged improper arrests and confinement on July 11, 2002, and their subsequent felony arrests and subsequent confinement commencing on July 29 and August 7, 2002, respectively. These claims are addressed separately because federal law provides a date of accrual for such claims that warrants a separate analysis. Specifically, federal law provides that a claim for false arrest and/or false imprisonment accrues – and limitations commences to run – on the date that the alleged wrongful imprisonment or confinement becomes legitimized by

judicial process.  As explained by the United States Supreme Court in *Wallace v. Kato*, 549 U.S.

384 (2007), which treated claims of false arrest and false imprisonment together:

> False arrest and false imprisonment overlap; the former is a species of the latter....  We shall thus refer to the two torts together as false imprisonment....  The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process* ... and the allegations before us arise from respondents' detention of petitioner without legal process....  They did not have a warrant for his arrest.... The running of the statute of limitations on false imprisonment is subject to a distinctive rule – dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned ....  Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end....  Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges....  If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.

*Id.* at 388-90 (emphasis in original; internal citations and quotation marks omitted).  Thus,

where, as in the instant case, an arrest is followed by criminal proceedings, "the statute of

limitations 'begins to run at the time the claimant becomes detained pursuant to legal process,'

not when the criminal prosecution terminates in favor of the accused." *Patin v. Richard, supra*,

2011 WL 9118, *4, *citing Wallace v. Kato, supra*.

Applying the foregoing rule in the instant case, it is alleged that plaintiffs J. Nelson and

T. Nelson were initially arrested on misdemeanor charges on July 11, 2002, but plaintiffs

acknowledge that their alleged wrongful confinement with respect to these charges admittedly

terminated on the same date because plaintiffs assert that they were able to bond out of jail that

same evening.  (R. Doc. 23 at 3).  *See Reed v. Edwards,* 487 Fed. Appx. 904, 906 (5th Cir. 2012)

(concluding that "a bond hearing satisfie[s] the definition of legal process within the meaning of

*Wallace [v. Kato]*"); *Laborde v. Lunceford*, 2010 WL 3238311, *3 (E.D. Tex. Aug. 13, 2010)

("Being bonded to appear is sufficient legal process to begin running the statute of limitations

under a Fourth Amendment false arrest claim").  Thus, plaintiffs' claims for false arrest/false

imprisonment in connection with the misdemeanor arrests of July 11, 2002, accrued on the same date – when they bonded out and when the alleged false imprisonment terminated – and so prescribed a year later on July 11, 2003. Further, and in any event, the referenced misdemeanor charges were thereafter admittedly voluntarily dismissed in their entirety several months thereafter, on September 11, 2002 (R. Doc. 23 at 5), thus terminating the alleged wrongful confinement in any event by that date. Accordingly, any claim for false arrest/false imprisonment relative to the misdemeanor arrests in July, 2002, must be seen to have long since prescribed when plaintiffs filed the instant lawsuit in 2010.

In addition to the foregoing, plaintiffs J. Nelson and T. Nelson also assert that they were subsequently falsely arrested on felony drug distribution charges on July 29 and August 7, 2002, respectively. As for plaintiff J. Nelson, it is alleged that this plaintiff was provided with a bond hearing on July 30, 2002, the day after his arrest (R. Doc. 1 at 43), at which time he was allegedly assessed a bond amount that had been improperly predetermined by Judge Robin Free. Even if this court disregards or discounts this "preset" bond determination as having been irregular or procedurally insufficient (as plaintiff J. Nelson suggests), plaintiff J. Nelson was admittedly arraigned thereafter before a state court judge on September 9, 2002, in connection with the felony charge (R. Doc. 1 at 46), thereby establishing an accrual date for his claim of false arrest/false imprisonment at least by that date. *See Wallace v. Kato*, *supra*, 549 U.S. at 389 (recognizing that a claim for false arrest or imprisonment accrues upon arraignment). And as for plaintiff T. Nelson, it is alleged in the complaint that this plaintiff was able to bond out of confinement on August 8, 2002, the day after her arrest. (R. Doc. 1 at 44). Thus, her claim accrued on that date because she was no longer subject to false imprisonment thereafter. *See Laborde v. Lunceford, supra* (concluding that a release on bond satisfies the requirement of

"legal process" for purposes of accrual of a wrongful imprisonment claim). Thus, the false arrest/false imprisonment claims of plaintiffs J. Nelson and T. Nelson on the felony drug distribution charges may be seen to have accrued for limitations purposes no later than August and September, 2002, respectively, and these claims asserted in the instant case are also clearly untimely, having been asserted more than one year thereafter.

Finally, the complaint and amended complaint assert that plaintiffs J. Nelson and T. Nelson were subjected to malicious prosecution by virtue of the referenced criminal charges levied against them in 2002. The elements of a claim of malicious prosecution will be addressed in greater detail below, but under state law, one of the elements of this claim is that the criminal prosecution complained of be terminated in the claimant's favor, at which time the cause of action for malicious prosecution is seen to accrue for limitations purposes. *See Jones v. Soileau*, 448 So.2d 1268 (La. 1984). In the instant case, plaintiffs J. Nelson and T. Nelson allege in the amended complaint that the misdemeanor charges levied against them on July 11, 2002, were voluntarily dismissed on or about September 11, 2002 (R. Doc. 23 at 5), and that the felony drug distribution charges levied against them on July 29 and August 7, 2002, respectively, were dismissed on an unspecified date in 2005. (R. Doc. 23 at 11). Thus, there can be no question but that the malicious prosecution claims of plaintiffs J. Nelson and T. Nelson, which are based on criminal charges that were dismissed no later than 2005 and which therefore accrued at that time, are time-bared when asserted in this proceeding filed more than one year thereafter.

Finally, the complaint and amended complaint include no further allegations whatever as to any wrongdoing by state or federal officials relative to plaintiffs J. Nelson and T. Nelson after the dismissal of the referenced criminal charges in 2005. Accordingly, having concluded that all apparent claims asserted by these plaintiffs are untimely, the court finds that these plaintiffs

should be dismissed from this proceeding.

C. William Nelson

Finally, turning to the claims asserted by the remaining plaintiff in this case, William

Nelson – which claims, in contrast to those of the other plaintiffs, may be seen to involve events

occurring after 2005 – the court finds, with one exception, that these claims are similarly barred

by the applicable statute of limitations.

First, as found by the court in connection with its analysis of the claims of the other

plaintiffs, all of W. Nelson's claims arising out of the alleged wrongful search of the 12th Street

Grocery and the alleged theft of files and moneys exceeding $18,000.00 on July 11, 2002,

accrued on the date of the search and are thus time-barred, having been asserted long after the

passage of the one-year limitations period.  See *Patin v. Richard, supra*, 2011 WL 9118, *4.

Plaintiff W. Nelson does not allege that he was arrested on that date, subjected to excessive

force, or subjected to a strip search as contended by the other plaintiffs in this case.

Further, although plaintiff W. Nelson similarly asserts a claim of false arrest/false

imprisonment arising from his alleged wrongful arrest on a drug distribution charge on July 29,

2002, it is acknowledged in the complaint and amended complaint that, as with plaintiff J.

Nelson, plaintiff W. Nelson was provided with a judicial bond determination the day after this

arrest and with an arraignment hearing before a state judge on September 9, 2002.  (R. Doc. 1 at

46).  Thus, inasmuch as a claim for false arrest/false imprisonment accrues – and the one-year

limitations period commences to run – when a claimant is held pursuant to legal process,

including process such as a judicial bond determination or arraignment, plaintiff W. Nelson's

false arrest/false imprisonment claim accrued in connection with the July 29, 2002, distribution

charge no later than the date of his arraignment on September 9, 2002, and was time-barred

when not asserted within a year thereafter. Similarly, although plaintiff W. Nelson complains of a second fraudulent drug distribution charge levied against him, this one in July, 2003 (R. Doc. 23 at 7), he concedes in the amended complaint that he was provided with a bond reduction hearing in connection with that charge on July 7, 2003, at which time his bond was reduced, and he was able to obtain a release from confinement in connection with that charge. (*Id.*). Thus, his claim for false arrest/false imprisonment in connection with that charge accrued no later than the date of that release and was prescribed a year later in July, 2004. *See Guillen v. County of Willacy, Tex.,* 2011 WL 1753323, *2 (S.D. Tex. May 6, 2011) (reiterating that plaintiffs "became detained pursuant to legal process when they were released on bond"); *Laborde v. Lunceford, supra* (concluding that a release on bond satisfies the requirement of "legal process" for purposes of accrual of a wrongful imprisonment claim). Finally, although it appears that plaintiff W. Nelson was subsequently re-incarcerated between January, 2006, and July, 2007, in connection with the pending criminal charges, there is no doubt that this confinement was pursuant to legal process and so cannot form the basis for a claim of false imprisonment. Specifically, plaintiff W. Nelson acknowledges that in November, 2003, while he was out on bond, he admittedly fled from the court's jurisdiction in order to avoid a scheduled trial, thereby violating the terms of his bond obligation. He further acknowledges that he remained "in hiding" until his re-confinement in 2006. Thus, his re-confinement at that time was pursuant to outstanding legal process and may not be seen to support a viable claim of false imprisonment.

Turning to a consideration of the remaining claims asserted by plaintiff W. Nelson, the court notes that the complaint and amended complaint contain far-ranging and voluminous claims of alleged wrongdoing by numerous city, state, parish and federal officials, as well as by private individuals, covering an extended period of time between his initial arrest in July, 2002,

and the dismissal of his pending criminal charges in December, 2009.  The court further notes

that, with few exceptions, all of these alleged acts of wrongdoing occurred more than one year

prior to the date that plaintiff W. Nelson commenced this proceeding through the filing of the

original complaint on December 9, 2010 (one year after the dismissal of the criminal charges).[7]

Thus, the court concludes that plaintiff W. Nelson's claims relative to these alleged acts of

wrongdoing are time-barred unless plaintiff Nelson is able to evade the effect of the limitations

---

[7]        The only events which apparently occurred during the one-year period preceding
the filing of the complaint in this case are (1) the alleged failure of newspaper and television
reporters to provide an outlet for plaintiff W. Nelson to explain his version of events and expose
the alleged wrongdoing of government officials, and (2) the alleged failure of certain court
reporters to provide transcripts of all proceedings conducted before the 18th Judicial District
Court.  Notwithstanding, neither a news outlet nor its reporters are seen to be state actors within
the meaning of § 1983, and the plaintiff has no constitutional right to insist that his version of
events be told or told accurately through such outlet.  *See Lavergne v. Taylor*, 2014 WL 906287,
*3 (W.D. La. March 7, 2014) (finding that neither "a private citizen local news reporter [nor] a
private newspaper ... are in any way clothed with the authority of state law" for purposes of §
1983); *Weatherton v. America's Most Wanted*, 2010 WL 4668965, *3 (M.D. La. Sept. 27, 2010)
(finding that "[t]he Fox Television Network and its officers and employees are not state actors").
Further, with regard to the claim asserted against the named court reporters, Plaintiff W. Nelson
admits that he has received some of the requested transcripts, and he has failed to state the nature
of the judicial proceedings that have allegedly not been transcribed, the date(s) upon which the
proceedings were held, the substance of any missing statements or testimony, what the
statements or testimony would allegedly show (other than, "in sequence the full corrupted
avenues the court agents and prosecutors ha[ve] taken" (R. Doc. 23 at 15)), or the reason that
plaintiff W. Nelson has been prejudiced by the failure to transcribe the referenced proceedings.
Nor does the plaintiff assert (1) that he has in fact tendered all appropriate fees to the referenced
court reporters or is financially able to do so, or (2) that he has been unsuccessful in obtaining
the transcripts during the intervening four (4) years since the original complaint was filed.
Further, official court reporters are entitled to qualified immunity in any event if they have acted
pursuant to their lawful authority and have followed in good faith the instructions or rules of the
court and are not in derogation of those instructions or rules.  *See Woodall v. Texas*, 78 Fed.
Appx. 953, 954 (5th Cir. 2003); *Pittman v. Conerly*, 2010 WL 282800, *4 (E.D. La. Jan. 21,
2010).  Plaintiff W. Nelson has failed to allege any facts to support a finding that these
defendants are not entitled to qualified immunity or that their actions have been anything other
than mere negligence which is not actionable under § 1983.  *See Oliva v. Rupert,* 555 Fed. Appx.
287, 288 (5th Cir. 2014).

period in some fashion.[8]  Although the complaint and amended complaint are far from clear

regarding the nature of the claims asserted or the basis for any extension of the applicable

limitations period, the court will nonetheless address below the means by which such limitations

period might be avoided.

---

[8]     Notwithstanding the availability of the limitations defense, the court concludes that it would likely find most of plaintiffs' claim to be without substantive merit or are not properly before the court in any event.  In the first place, from a jurisdictional standpoint, although plaintiffs have invoked this court's diversity jurisdiction under 28 U.S.C. § 1332, such jurisdiction does not lie where, as here, complete diversity is not present between all plaintiffs and defendants.  Further, whereas plaintiffs have invoked this court's jurisdiction under 18 U.S.C. § 242, the remedy provided by that criminal statute is unavailable because the statute provides no private right of action.  In addition, the court notes that plaintiffs have named certain federal and state defendants solely or jointly in their official capacities.  The claims asserted in such capacity would be found barred in federal court by reason of the Eleventh Amendment, specifically because an official-capacity claim asserted against a state or federal official is seen to be a claim asserted directly against the sovereign.  Finally, although plaintiffs seek to invoke the Federal Tort Claims Act in connection with claims asserted against federal officials, jurisdiction under this statute is not apparently be available because plaintiffs have failed to name the United States as defendant and have apparently failed to assert a timely administrative claim against the appropriate federal agency or agencies, both of which are prerequisites under this statute.

In addition to the foregoing, and without engaging in an in-depth analysis, the court notes that many of the claims asserted by plaintiffs would be subject to dismissal upon substantive review.  These would include claims asserted against (1) judicial officers, prosecutors, court reporters and the named clerk of court, all of whom, to varying degrees, enjoy the benefit of either absolute or qualified immunity, and (2) private attorneys (either retained or appointed), confidential informants, and other non-governmental persons, who are seen not to be state actors for purposes of § 1983 liability.  Further, many of plaintiff claims are based upon purely conclusory allegations that are not sufficiently supported by factual development; many of the named defendants are not alleged to have sufficiently participated, directly and personally (as opposed to in a supervisory capacity), in the events alleged to have violated plaintiffs' constitutional rights; and one of plaintiffs' principal complaints – that he made repeated requests to numerous state and federal agencies for an investigation into his claims but received no response – does not implicate any constitutional right upon which plaintiffs may rely.  Finally, whereas the complaint and amended complaint make numerous references to generalized wrongdoing engaged in by defendants relative to black or impoverished persons within the community, it is clear that *pro se* plaintiffs do not have standing to assert claims relative to the alleged violations of the rights of third persons injured by the defendants' alleged wrongful conduct.

<u>Availability Of The Continuing Tort Doctrine</u>

Plaintiffs assert in the amended complaint that they have been subjected to "ongoing EIGHT YEARS OF CONTINUANCE OFFENCE ... plotted together by all defendant working hand to hand to un lawfully entrap an convict innocent plaintiffs." (R. Doc. 23 at 20). This assertion may be interpreted as contending that the doctrine of continuing tort operates to extend the limitations period in this case. This argument must fail, however. As stated in *O'Gea v. Home Depot USA, Inc.*, 2009 WL 586124 (E.D. La. March 4, 2009), where the court addressed a claim of malicious prosecution and rejected an argument by plaintiff that the continuing tort doctrine excused the late filing of the complaint:

> The continuing tort doctrine is an exception to the commencement of prescription. This "exception only applies when continuous conduct causes continuing damages. Where the cause of the injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct causing the damage is abated." Louisiana Courts have consistently "noted[d] that the scope of application of continuing tort is limited. Both conduct and damage must be continuous."

*Id.* at *4. (Citations omitted). In the instant case, plaintiffs have not pointed to any alleged unlawful conduct or to any specific activity that was continuously engaged in by defendants and that, moreover, was continued up to and including the year preceding the filing of the complaint in this case. The mere pendency of plaintiff W. Nelson's criminal proceedings may not alone be interpreted to constitute a continuous act of wrongdoing by any person. Although plaintiff W. Nelson may arguably have suffered ongoing "ill effects" because of the pendency of the criminal proceedings, "the statute of limitations is triggered not by the cessation of ill effects, but by the cessation of the unlawful act(s). 'A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act,'" *i.e.,* not by the continuing ill effects resulting from the alleged commencement and prosecution of the pending criminal charges in this case. *Cf., O'Gea v. Home Depot USA, Inc.*, *supra.* In the instant case, the sole action taken

in connection with plaintiff W. Nelson's criminal prosecution during the one-year period preceding the filing of the complaint in this case was the dismissal of the pending criminal charges against plaintiff W. Nelson on December 9, 2009. The court does not interpret this action, which was not wrongful in itself and which, in fact, ultimately inured to plaintiff W. Nelson's benefit, to be an unlawful act which extended the limitations period for conduct which preceded it.

Extension Of The Limitations Period Through Allegations Of Conspiracy

The allegations of the complaint and amended complaint in this case may also be interpreted to include an assertion that the named defendants conspired together to cause the plaintiffs harm. This argument, however, fares no better as a means of extending the limitations period in this case. In *Harris v. Rivera*, 2013 WL 246709, *9 (N.D. Tex. Jan. 13, 2013), the court evaluated a claim of malicious prosecution which included an allegation that the defendants had engaged in continuing actions in furtherance of a conspiracy, which actions were asserted to extend the limitations period. The court found in that case that the limitations period had arguably been extended but, in doing so, the court focused on plaintiffs' allegation that the defendants had committed overt acts in furtherance of the conspiracy during the applicable limitations period, specifically by falsifying documents and providing perjured testimony during that time.[9] As stated by the court, in finding that the overt wrongful acts committed within the limitations period warranted a finding that the claim was not time-barred:

---

[9] The court further notes that in *Harris*, the court ultimately concluded that plaintiffs' conspiracy claim was independently barred because "a conspiracy claim is not actionable without an actual violation of section 1983," and plaintiffs had not adequately pleaded a violation of plaintiffs' constitutional rights based upon an illegal arrest, detention and prosecution or based upon a claim of malicious prosecution arising therefrom. 2013 WL 246709 at *13.

When a civil conspiracy is alleged, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987).... In *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977), on which the Fifth Circuit relied in *Helton,* the court explained "that a cause of action for each invasion of the plaintiff's interest arises at the time of that invasion and ... the applicable statute of limitations runs from that time." *Kadar,* 549 F.2d at 234 (brackets and citations omitted) (considering whether any additional overt acts occurred during the limitations period in deciding whether conspiracy claim was time-barred).

*Harris v. Rivera, supra*, 2013 WL 246709, *9. *Compare Guillen v. County of Willacy, Texas, supra*, 2011 WL 1753323 (rejecting a false arrest claim as untimely and specifically finding that, because plaintiffs "'alleged no overt acts of a conspirator within the limitations period,' they failed to state a civil conspiracy claim"). Similarly, the complaint and amended complaint in this case fail to assert that any alleged overt wrongful acts were undertaken by any defendant, much less by any co-conspirator, during the year preceding the filing of the complaint herein. Accordingly, there is no basis for extending the limitations period based upon this argument.

<u>Accrual Of Malicious Prosecution Claim Within The Limitations Period</u>

Finally, although it is not clearly expressed as such in any of plaintiffs' pleadings, the court interprets the complaint and amended complaint to assert a claim of malicious prosecution in connection with W. Nelson's criminal charges, which charges were not dismissed until December 9, 2009, one year prior to the filing of the original complaint herein. Further, the court finds that plaintiff W. Nelson's <u>state law</u> claim of malicious prosecution arguably did not accrue until the date of such dismissal because an essential element for accrual of a state law claim of malicious prosecution is the *bona fide* termination of proceedings in favor of the plaintiff. *See Green v. Rousselle*, 2013 WL 1681989, *2 (E.D. La. April 17, 2013).[10] Thus, the

[10]     In Louisiana, the essential elements of the tort of malicious prosecution are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its *bona fide* termination

court concludes that plaintiff W. Nelson's state law claim for malicious prosecution remains potentially viable in this case. Notwithstanding, as discussed below, the court must nonetheless conclude that plaintiff's federal § 1983 claim for malicious prosecution is subject to dismissal for failure to state a claim upon which relief may be granted.

The law in the Fifth Circuit concerning the assertion of a malicious prosecution claim under §1983 changed significantly with the *en banc* decision in *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (*en banc*). Pursuant to the Fifth Circuit's case law before *Castellano*, which case law the Fifth Circuit itself had described as "confused and confusing," *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir. 2000), a plaintiff could assert a claim of malicious prosecution under § 1983 simply by alleging the elements of the state law tort of malicious prosecution in the state where the deprivation of civil rights had occurred. Specifically, the Fifth Circuit had stated: "[T]he rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive. *Id.* In *Castellano*, however, the Fifth Circuit re-examined its precedents and concluded that the "weak discipline" of those earlier cases had impermissibly allowed "the blending of state tort and constitutional principles." *Castellano v. Fragozo, supra*, 352 F.3d at 945. Ultimately, the Fifth Circuit concluded in *Castellano* that a malicious prosecution claim under § 1983 based on the elements of state tort law lacked any constitutional underpinning. Thus, the court concluded that "no such freestanding constitutional right to be free from malicious prosecution exists" and, in order to support a claim arising under § 1983, courts "must insist on clarity in the identity of the constitutional violations asserted." *Id.* at 945. The court

_____

in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; 95) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Jones v. Soileau, supra*, 448 So.2d at 1271 (La. 1984).

further stated:

> [C]ausing charges to be filed without probable cause will not without more violate the Constitution.  So defined, the assertion of malicious prosecution states no constitutional claim.  It is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation.  The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection – the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued.  Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

*Id.* at 953-94.

Applying the foregoing rationale, the court finds that plaintiff W. Nelson has not clearly and expressly provided a specific constitutional underpinning for a federal claim of malicious prosecution sufficient to elevate that claim to one recognizable under § 1983.  As previously noted, the allegations of the complaint and amended complaint in this case are far from being models of clarity and, instead, pared down to their essentials, amount to no more than claims by plaintiffs that arise principally from searches and subsequent arrests and charges occurring in July, 2002, which charges were found to be supported by probable cause and were based upon information provided by a confidential informant who, although subject perhaps to being challenged based upon an extensive criminal record, nonetheless asserted that plaintiffs had participated in the distribution of illegal drugs.  The complaint and amended complaint do not even recite the elements of the *state law* claim of malicious prosecution upon which plaintiffs, in their voluminous pleadings, apparently seek to rely.  Further, plaintiffs' assertions that all events subsequent to the search of July 11, 2002, were part of a far-reaching conspiracy by state and parish officials – both to cover up the wrongdoing of sheriff's officers conducting the search and to retaliate against plaintiffs for the exercise of First Amendment rights – are entirely conclusory

and are not supported by corroborative factual allegations.  Thus, in the court's view, plaintiffs have not provided the necessary "clarity" in identifying the constitutional violations asserted or the factual basis therefor and, without more, they present only a freestanding claim of malicious prosecution that is not cognizable under § 1983.  *See Green v. Rousselle, supra*, 2013 WL 1681989 (dismissing federal malicious prosecution claim as time-barred even though complaint was apparently filed within one year of termination of legal proceedings and even though state law malicious prosecution claim was found to be timely, where arrest and detention (allegedly without probable cause and based on false claims and the withholding of exculpatory evidence) occurred "nearly 23 months before suit was filed"); *Hatten v. Busbice*, 2013 WL 4648332 (W.D. La. Aug. 29, 2013) (dismissing federal malicious prosecution claim because "the U.S. Constitution does not provide for a freestanding right to be free of malicious prosecution," where plaintiff alleged that arrests and charges were not supported by probable cause and were instead malicious and based on slander, and no other constitutional violation was specifically identified); *Patin v. Richard, supra*, 2011 WL 9118 (dismissing federal malicious prosecution claim where plaintiff did "no more than recite the state law elements for the tort of malicious prosecution," and where there were no "events at trial leading to a wrongful criminal conviction, such as perjury or the use of manufactured evidence ... to supply 'the constitutional footing for a claim seeking recovery for damages ... as opposed to ... [those for] arrest and pretrial detention"); *LeBlanc v. City of Haltom*, 2011 WL 2222175, *2 (N.D. Tex. June 7, 2011) (dismissing malicious prosecution claim based on continuation of prosecution after original "search and seizure and arrest and incarceration" because, where original incidents were time-barred, they were "not claims that would provide a pedestal that would support a § 1983 claim for malicious prosecution."  The court further noted "that it would be an unusual, and unacceptable, state of

affairs if a malicious prosecution claim under § 1983 could find its support in constitutional claims that are subject to dismissal by reason of a statute of limitations bar").  Accordingly, the court recommends dismissal of plaintiffs' federal claims in their entirety.

Supplemental State Law Claims

Finally, although plaintiffs seek to invoke the supplemental jurisdiction of this court over their state law claims arising from the incidents complained of, a district court may decline the exercise of supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having recommended that the plaintiffs' federal claims asserted against the defendants be dismissed, the court concludes that it is appropriate for the court to decline the exercise of supplemental jurisdiction over plaintiffs' state law claims asserted herein.  In addition, the court notes that there is an outstanding legal question relative to the viability of plaintiffs' state law claims of malicious prosecution inasmuch as the criminal charges levied against them were not substantively resolved.  Specifically, the Fifth Circuit has recently certified a question to the Louisiana Supreme Court regarding whether the requirement of a *bona fide* termination in favor of a claimant is satisfied when the termination of prosecution is purely procedural and does not involve a determination on the merits.  *See Lemoine v. Wolfe*, 2014 WL 3562755, *9-10, ___ Fed. Appx. ___ (5th Cir. July 18, 2014).  Accordingly, the resolution of this question in the instant case is more appropriately left for determination by a state tribunal, further supporting the instant recommendation that the court decline the exercise of supplemental jurisdiction in this case.

<u>Recommendation</u>

It is recommended that supplemental jurisdiction over plaintiffs' state law claims be declined and that plaintiffs' complaint and amended complaint be dismissed, with prejudice, for failure to state a claim in accordance with the screening provisions of 28 U.S.C. § 1915(e)(2)(B), and without prejudice to any state law claims that plaintiffs may have.

Signed in Baton Rouge, Louisiana, on September 5, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**